IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. SAG-22-366 |
| | * | |
| ANNA GABRIELIAN & | * | |
| JAMIE LEE HENRY, | * | |
| | * | |
| Defendants. | * | |
| | ******* | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SEVER TRIAL AND REQUEST FOR HEARING

The United States of America responds to Defendant Henry's motion for severance, ECF 48.

## LEGAL BACKGROUND

As the Defendant properly recognizes, there is a presumption that co-defendants, including those charged with conspiracy, are to be tried together. ECF 48, at 2 (*citing Zafiro v. United States*, 506 U.S. 534, 537-38) (1993); *accord United States v. Brugman*, 655 F.3d 540, 542 (4th Cir. 1981) ("[b]arring special circumstances, individuals indicated together should be tried together."). The party moving for severance (in this case the Defendant) bears the burden of showing actual prejudice will result from a joint trial. *United State v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995). Unless a "miscarriage of justice" will result, there is a presumptive expectation that co-defendants should and will be tried together. *Richardson v. Marsh*, 481 U.S. 200, 206-11 (1987). Severance is only required under Rule 14 when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocent." *Zafiro*, 506 U.S. at 539.

**ARGUMENT**

The Defendant fails to carry his burden that there is a serious risk of a miscarriage of justice in this matter. While the Defendant claims that his "intention was not to help Russia, but to stop the harm done to all casualties of war," that is belied by the facts in this case. *See* ECF 48, at 3. The Defendant – an Army Major with a security clearance – met surreptitiously with an agent of the Russian Embassy, told her he'd wanted to join the Russian Army, discussed how Russia should cut off gas to Germany to harm the U.S. military hospitals there, described the conflict in Ukraine as a result of the United States "own hatred for Russia," described his best knowledge of "weak points" in the U.S. Army healthcare system,  The Defendant wanted to assist the Russian Government, and he turned over medical records in order to do so.

First, Henry told the UC that he had looked into enlisting in the Russian Army.  He told the UC in their first meeting, he did "research myself, when Russia was taking volunteers, you know, and I was like, oh, getting on the army, I knew a couple people . . . like they want medics, they don't want doctors, at least that's what I could find. So, and people with combat experience which I have none."  Enlisting in the Russian Army is hardly stopping "all casualties of war."

Second, Henry told the UC that Russia should consider cutting off the gas supply to Germany in order to make the U.S. military bases there (including the military hospitals) inoperable: "Germany, I know needs your gas. And Germany is also where the U. S. Military keeps their Walter Reed equivalent and, you know, in Landstuhl. Like they rely on the German government and supplies there in Germany . . .  can't function without electricity, gas."

Third, far from bemoaning the loss of life on both sides, Henry made clear that he believed, "that the United States is using Ukrainians as a proxy for their own hatred towards Russia. And I think the current administration has hatred towards Russia because Hillary Clinton lost in 2016.

And I think Obama was offended by Putin because Obama is an effeminate man and he's intimidated by the values that Putin has[.]"

Fourth, Henry described to the UC the "weaknesses of military medicine in the United States." He explained "there's a central location that runs the entire network for the military healthcare system . . . I want to say somewhere in Illinois . . . if the network is down, you can't actually function as a nurse, as a doctor."

Fifth, Henry – a Major in the United States Army – met in a hotel room with a representative of the Russian Embassy and told her that "I don't want to know your name . . . cause I wanted plausible deniability too. Cause security clearance situation, they want to know, like, name and people and all this stuff."

Major Henry's goal was to assist the Russian government. Detailing "weaknesses" in U.S. military medicine, expressing a desire to volunteer in the Russian Army, encouraging Russia to cut off electricity to U.S. military bases, all while emphasizing the need for "plausible deniability" of his contacts, underscores Henry's desire to help Russia.

The Defendant is free to argue otherwise at trial, but his bald assertions fly that he had no interest in heling the Russian government fly in the face of his own recorded statements, and are far short of carrying his burden to show prejudice and that a "miscarriage of justice" will otherwise result.

3

        Respectfully submitted,

        Erek L. Barron
        United States Attorney


By:     /s/
        Aaron S.J. Zelinsky
        P. Michael Cunningham
        Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, a copy of the foregoing motion was electronically filed via CM/ECF which provides notice to counsel of record.

_____/s/_____
Aaron S.J. Zelinsky
Assistant United States Attorney