IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO.  SAG-22-366 |
| | * | |
| ANNA GABRIELIAN & | * | |
| JAMIE LEE HENRY, | * | |
| | * | |
| Defendants. | * | |
| | ******* | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE POLITICAL STATEMENTS

Defendant Henry is an Army Major with a Secret-level security clearance who met surreptitiously with someone he believed was an agent sent by the Russian Embassy, sought "plausible deniability," didn't want to know her name, and had been reading a book titled, *Inside the Aquarium: The Making of a Top Soviet Spy*. At his co-defendant's urging, Henry turned over medical records related to at least six individuals who received medical care at Ft. Bragg to the Undercover FBI Agent.

The statements Defendant Henry seeks to preclude relate to his own description of *why* he was conspiring with someone he believed to be an agent of the Russian Embassy.  They provide direct and probative evidence of Henry's motivations for his actions.  The Defendant's motion to preclude them, ECF 53, should therefore be denied.

### BACKGROUND

At a meeting in the FBI Undercover Agent's ("UC") hotel room on August 17, 2022, Gabrielian first told the UC it was "really my love country that's driving me,"[1] to assist the Russia Government.  The following conversation ensued:

---

[1] From context, Defendant Gabrielian was referring to Russia as "my country."

HENRY: For me, it's my hate of war and just . . . you know, the United States; I think the United States… My experience, having been in the military for 22 years, is we instigate a lot. And we are very arrogant and what we think we know and what we can do with the tools that we have. You know, and it has hurt many, many people across the globe. And I don't see how constitutionally, you know, reading the American constitution and what I've sworn to defend, how this hegemony can persist, you know, without dire consequences to our own United States, you know, being suffering. . . .

We have an ideology too that is very rigid, black and white – a lot of Islamists are, and Christians are as well – it creates a lot of violence and political violence. And, you know, the way that I am viewing what's going on right now in Ukraine is that the United States is using Ukrainians as a proxy for their own hatred towards Russia. And I think the current administration has hatred towards Russia because Hillary Clinton lost in 2016. And I think Obama was offended by Putin because Obama is an effeminate man and he's intimidated by the values that Putin has. Just as many Americans are offended by Trump in the way that he presents himself. And I think it's personality-driven partly, and a lot of people are dying as a result of people's arrogance and personality, you know . . .

GABRIELIAN: A lot more people died than needed to. Because of what . . . Um, America has done is prolong the bloodbath.

HENRY: Yeah, exactly. And so we have an ideology too, that's very rigid, black and white, like a lot of Islamists are and Christians as well, that really… It creates a lot of violence, potential violence. And… You know, the way that I am viewing what's going on right now in Ukraine is that the United States is using Ukrainians as a proxy for their own hatred towards Russia. And I think the current administration has hatred towards Russia because Hillary Clinton lost in 2016. And I think Obama was offended by Putin because Obama is an effeminate man and he's intimidated by the values that Putin has. Just as many Americans are offended by Trump in the way that he presents himself. And I think it's personality-driven partly, and a lot of people are dying as a result of people's arrogance and personality, you know…

GABRIELIAN: A lot more people died than needed to. Because what America has done is prolonged the bloodbath.

HENRY: Knowing that-… You look at what we've done in Libya, for instance. Hillary Clinton is very proud of what she accomplished in Libya, which is basically creating anarchy, you know. There's slave trade going on in Libya now. Talk about oil being wasted, you know, and oil being used to support terrorism. It's insane, you know, and she's proud of it. And it's…

GABRIELIAN: I do think we are on the same page.

HENRY: At least George W. Bush in his recent speech in Texas let out this Freudian slip, when he's like, well and that too, you know, like…

UC: I heard that too.

HENRY: It's like he actually I think feels guilt. I don't think Dick Cheney feels any guilt for what he's done, it's very clear from his daughter in the way that she acts.

## ARGUMENT

Henry made these statements to the UC precisely to show the motive for his actions. He was interested in assisting Russia because he believed the United States was unfairly "using Ukrainians as a proxy for their own hatred to Russia." Henry acted – by his own statements – in out his dissatisfaction with the current administration, which he believed had "hatred toward Russia," which he believed stemmed from "Hillary Clinton's" defeat in 2016, and former President Obama being "intimidated" by the "values that Putin has." And his co-defendant adopted his statements, telling the UC, "I do think we're on the same page." Henry further emphasized his disgust with the actions of former Vice President Dick Cheney and former President George W. Bush.

These statements show why Henry was conspiring together with an individual he believed was sent by the Russian Embassy: Henry was acting not just out of a "hate of war," but also because he believed that U.S. leadership was using "Ukrainians as a proxy for their own hatred towards Russia," and that the dislike from Russia stemmed from President Obama being "intimidated by the values that Putin has." Henry was telling the UC why he was willing to conspire against the country he had "sworn to defend:" Henry did not like things its leadership had done, and the position its leadership had taken toward Russia in a variety of different administrations of both parties.

Such information is clearly relevant under Federal Rule of Evidence 401 and thus

3

admissible under Rule 402. The definition of relevance is inclusive – any evidence that "has a tendency to make a fact more of less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. And, settled precedent makes clear that relevance typically presents "a low barrier to admissibility." *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003). To meet the relevance standard, "evidence need only be 'worth consideration by the jury,' or have a 'plus value.'" *Id.* There is no question that evidence of *why* the defendant undertook the criminal activity is relevant.

The Defendants also contend, ECF. 53, at 5-6, that Henry's statement is unfairly prejudicial and suggests that, applying Federal Rule of Evidence 403, the Court should not permit the jury to see it. This argument is misguided. Initially, little risk exists of unfair prejudice to Henry or Gabrielian. Rule 403 does not apply to "powerful, or even 'prejudicial' evidence" but instead "focuses on the 'danger of *unfair* prejudice.'" *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (Court's emphasis). This means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 192 (1997). Rule 403 "does not provide a shield for defendants . . . permitting only the crimes of Caspar Milquetoasts to be described fully to a jury." *Gartmon*, 146 F.3d at 1021. Playing the statements by Henry does not invite them to convict Henry because of his political beliefs – it shows the jury that his political beliefs are the reasons for his actions.[2]

---

[2] Should the Court have concerns about this evidence, any risk of unfair prejudice should be addressed through a limiting instruction issued by the Court, rather than by excluding important evidence altogether. See Adv. Comm. Note to Rule 403 ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction."); see, e.g., *United States v. Abel*, 469 U.S. 45, 54-55 (1984) (explaining that precautions, including a limiting instruction, "did not prevent all prejudice" but did "ensure that the admission of th[e] highly probative evidence did not unduly prejudice " the defendant).

## CONCLUSION

For the foregoing reasons, the Defendant's Motion should be denied.

                                        Respectfully submitted,

                                        Erek L. Barron
                                        United States Attorney

By:         /s/
                                        Aaron S.J. Zelinsky
                                        P. Michael Cunningham
                                        Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, a copy of the foregoing motion was electronically filed via CM/ECF which provides notice to counsel of record.

                                                              _____/s/_____
                                                               Aaron S.J. Zelinsky
                                                              Assistant United States Attorney