IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO.  SAG-22-366 |
| | * | |
| ANNA GABRIELIAN & | * | |
| JAMIE LEE HENRY, | * | |
| | * | |
| Defendants. | * | |
| | ******* | |

## GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE CROSS EXAMINATION OF CASE AGENT REGARDING INTERNAL DISCUSSIONS

Internal investigative discussions not involving the undercover or the defendant are "'irrelevant' to entrapment because 'whether or not or not [the defendant] was induced had to be assessed by what was specifically presented to [the defendant] by the agents *rather than what the agents discussed amongst themselves*." *United States v. Young*, 916 F.3d 368, 382 (2019) (emphasis added).   What the defendants saw and heard is what matters, not what internal conversations the prosecution team had about what to tell them.

"Inducement is a term of art: it involves elements of governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." *United States v. Daniel*, 3 F.3d 775, 778 (4th Cir. 1993) *See also Jacobson v. United States*, 118 L. Ed. 2d 174, 112 S. Ct. 1535, 1540 (1992). Solicitation, by contrast, is the provision of an opportunity to commit a criminal act.  *Daniel*, 3 F.3d at 382.   Request by law enforcement officials to engage in criminal activity is not an inducement.  *See United States v. Burkley, 591 F.2d 903, 911–14* (D.C. Cir. 1978).  There was no inducement here, and the internal communications among

the investigative team – none involving the undercover agent – about what laws Gabrielian and Henry had already conspired to violate are not relevant.[1]

In Meetings Two and Three, Gabrielian and Henry repeatedly discussed providing medical records of prominent individuals to Russia, and noted they would do so except for fear of getting caught, so if they did so, it would have to be "life-changing" to be "justifiable." At that point, the Defendants proposed the idea of providing sensitive medical records. There is no separate crime for providing the medical records of prominent individuals. That the undercover thereafter in Meeting Four proposed a way for them to potentially commit the offense without getting caught is not at all relevant to entrapment, since the Defendants came up with the idea for the crime and proposed it on their own. If the Defendants were to say they wanted to rob Fort Knox, but it's too secure and so they would need a large contingent of people, and the Undercover were to propose instead they target a local bank, the Defendants are still bank robbers when they rob the local bank. And they have not been induced. The prominence of a target does not influence the fact of a crime.

In the second meeting on August 17, 2022, Dr. Gabrielian – on her own accord, with no prompting whatsoever from the Undercover Agent regarding medical records, had an extensive conversation with the agent about obtaining HIPAA protected IIHI and providing it to the Russian Government. She proposed violating the law and had no qualms about doing so. Her only concern was that she might get caught because records are audited. Gabrielian brought up breaking the law. Her only concern was detection. So, she told the agent it would have to be a sufficiently important matter for her to take the risk. Gabrielian stated: "[W]hat can I do? Well, yes – someone important is possibly being treated at Hopkins. I can access that chart one time, and after that I will

---

[1] This motion focuses on Meetings 1-3 given the Court's discussion. However, the Government contends that there is also no evidence of inducement in Meeting 4 and will so argue regarding jury instructions.

be fired with such scandal . . . but I open the chart that someone wants to know something about, just to check it out – I will be fired immediately. And they audit it. . . all these leader politicians . . . it gets audited." Ex. 6, at 59-60.  She continued, "And it's the same with Jamie.  That is to say, the president could be going to the hospital where he worked, Reed== and Jamie has that kind of access, but he could look at it one time, and then that would be it.  I mean, everything gets dug up, and then some guy comes in who says, 'Why were you looking?' In other words, as for this information, we cannot give it to you.  Or if we provided it, then it will be that's it." *Id*, at 68.  Gabrielian continued, "And it would have to be more than just, 'We want to help, in theory, and== because that's the end of our career." *Id*. at 68.  The Undercovers stated, "We- we don't want to condemn you to that, so I- I will not even ask for that sort of thing."  Gabrielian continued, "If – if it would somehow radically change the situation, then—I would even be prepared to do it.  But after that, I could boldly wave . . . goodbye to the States—and go to Russia – because here, I would no longer be able to find a job. In other words, to collaborate with Russia, yes; to publish everything, Yes—but to rummage around in political records , , , now that's a 'no.' And for Jamie . . . for Jamie it's even worse . . . because he still has this access, but he said to me, 'two more weeks'—and I don't think that what he can give you will change everything to the extent – that it would be justifiable." *Id.* at 69-70.

      The UC asked Gabrielian about the level of Jamie's access to political figures. She told the Undercover – who had never mentioned the President at all – "I have to ask, because . . . I don't know whether he can open the chart of the president—or not." *Id.* at 71.  The Undercover responded, "Well, it's just interesting. I'm just asking out of curiosity. I am not asking to open. . . we won't. Okay . . well, all right, then. Go ahead. . . to him." *Id.* at 71.

3

Later that day, in the third meeting, Dr. Henry again brough up medical records, noting that the Army relied "entirely" on electronic medical records. *Id*. at 108. When the UC asked Dr. Henry if he had "access to something that – colleagues will find of extreme importance," Henry responded, "I have access to – I mean I have access to everything but my e-mail . . . to all of the medical records—there. I could've checked from my home computer." *Id.* at 120-122. Then Gabrielian volunteered that that, "If I have to look somebody up, and I do look somebody up, I lose my spot at Hopkins . . . so if that's done, it has to be something that's awesomely important – not just, 'let's just check if this person has polyps." *Id*. at 123. In other words – the risk of looking up a medical record was high, and so Gabrielian would only do it it would be "life changing" and her kids would have to be on "a nice flight to Turkey, to go on vacation." *Id.* at 123. Later in that same meeting, the UC said she would have questions about Henry's "access," and asked him whether the could go back to Ft. Bragg. Henry replied that he could go to "Walter Reed" – one of the United States military's premier medical centers. *Id*. at 130. Henry said that, "My CAC is good 'til November 2023—is what it -said on today-when I was accessing all the stuff," against discussing medical records.

In other words, it was Dr. Gabrielian and Henry that brought up accessing patient medical records. They proposed offering such material to Russia, but only if it would be sufficiently worthwhile, and expressed fear of getting caught doing so as the only possible deterrent. There was no inducement by the Undercover Agent in proposing that the doctors therefore instead provide medical records of their own patients – which were less likely to get them caught. Because they had already proposed *providing medical records*. And any email with an agent advising about what crimes Henry and Gabrielian is not at all relevant to the actions taken by an Undercover Agent, all of which were on tape.

4

## CONCLUSION

The internal discussions of the investigative team are irrelevant under *Young*. What matters is what the Defendants saw and heard, not what the investigative team discussed. They should not be admitted. Moreover, the evidence is crystal clear that the defendants proposed, totally on their own, disclosing medical records. Their only concern was they might be caught doing so if the medical records related to prominent people. Any proposal that the defendants therefore provide medical records of less prominent people is therefore not inducement.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:   _____/s/_____
Aaron S.J. Zelinsky
P. Michael Cunningham
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day, a copy of the foregoing motion was electronically filed via CM/ECF which provides notice to counsel of record.

                                                  _____/s/_____
                                                  Aaron S.J. Zelinsky
                                                  Assistant United States Attorney