IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO.  SAG-22-366 |
| | * | |
| ANNA GABRIELIAN & | * | |
| JAMIE LEE HENRY, | * | |
| | * | |
| Defendants. | * | |
| | ******* | |

### GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT

**1. The Court Should Again Admit the Defendants' Statements Regarding Political and Military Officials.**

The Defendant previously moved to exclude evidence regarding statements made regarding various political officials of both parties. *See* ECF 53.  The Government previously responded. ECF 71.  And this Court—noting that the statements concerned political officials of *both* parties and did not appear partisan—properly denied the defendants' motion. ECF 82.  For the reasons given in the Government's initial briefing on this matter, ECF 71, the Court's decision on the records previously, as well as fur the reasons discussed further below, the motion should be denied.

First, the defendants claim that this Court should credit Dr. Gabrielian's self-serving testimony seeking to minimize the import of these statements. *See* ECF 166-1, at 2.  But the Government argued—strenuously—that the defendant's self-serving statements were false and should not be credited.  Therefore, the Court should not take the defendants' word for it, but should rather allow the statements to be played and let the jury determine whether they indicate what the government argues—that the defendants displayed ample motive for their actions and attempted

to show to the U.C. where there true loyalties were; helping Russia to the detriment of the Untied States—being a "long term weapon." This is a matter for the jury, not one where they Court should take the defendant's testimony at face value.

To the extent the defendants now have added Dr. Henry's comments showing that he hoped an American general might be assassinated, such remarks are relevant to proving motive as well as Dr. Henry's state of mind at the time of the offenses, and to dispelling the argument furthered by the defendants that they were somehow in fear of the U.C. Far from it: these remarks show that the defendants sought to curry favor with the U.C. and indicate ideological alignment as a way of building rapport and showing commitment to a common cause.

Furthermore, these statements show why Dr. Henry was conspiring together with an individual he believed was sent by the Russian government: Henry was acting not just out of a "hate of war," but also because he believed that U.S. leadership was using "Ukrainians as a proxy for their own hatred towards Russia," and that the dislike from Russia stemmed from President Obama being "intimidated by the values that Putin has." Henry was telling the UC why he was willing to conspire against the country he had "sworn to defend:" Henry did not like things its leadership had done, and the position its leadership had taken toward Russia in a variety of different administrations of both parties. So Dr. Henry was willing to help a foreign power.

The defendants argue that these statements are proof only of motive, not intent. *See* ECF 166-1, at 8. But motive evidence is critical evidence for the government at trial. And while the government has no objection to the Court instructing regarding the difference between motive and intent (as has previously been agreed), the law is clear that "the presence or absence of motive is a circumstance that [the jury] may consider as bearing on the intent of a defendant." *See* Sand &

2

Siffert, Model Fed. Crim. J. Instruct. 6-18.  Moreover, these statements are indicative of intent, as they show the defendants state of mind close in time to the offenses being committed.

Little risk exists of unfair prejudice to Dr. Henry or Dr. Gabrielian. Rule 403 does not apply to "powerful, or even 'prejudicial' evidence" but instead "focuses on the 'danger of unfair prejudice.'" *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (Court's emphasis). This means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 192 (1997). Rule 403 "does not provide a shield for defendants . . . permitting only the crimes of Caspar Milquetoasts to be described fully to a jury." *Gartmon*, 146 F.3d at 1021. Playing the statements by the defendants does not invite the jury to convict the defendants because of their political beliefs – it shows the jury that his political beliefs formed part of the reasons for their actions.

2. **The Defendant's Position as an Active-Duty Major Stationed at Ft. Liberty with a Secret-Level Security Clearance is Relevant and Admissible.**

The Defendant's seek to preclude evidence that Defendant Henry was a Major in the United States Army at the time of these crimes, and that he held a secret-level security clearance. ECF 166-1, at 12-13.  They also seek to preclude mention of what forces are stationed at Fort Liberty.[1] The defendants argued at trial that they were intimidated by a person they believed to be a member of the "KGB" into turning over evidence, even though Dr. Henry never even spoke with Dr. Gabrielian about her concerns, as far as the testimony showed.  Dr. Henry's rank in the military and security clearance cut to the core of this argument: one would expect an active-duty Major to not sit idly by while his wife brings him into a plot with a person he believes to be a member of the "KGB."  Similarly, the units stationed at Fort Liberty are important to understanding what Dr.

---

[1] Since trial, Fort Bragg has been renamed Fort Liberty. The Government intends to so note to the jury and use Fort Liberty at trial, as that is the name of the facility.

3

Gabrielian was offering to Russian officials when she noted her husband could help in "any way possible." And to help explain what exactly Dr. Garbielian was offering when she sua sponte raised the possibility of providing the U.C. with base access.

As for the material turned over by the defendants, while the defendants focus on the actual patient information copied down, Dr. Henry first tried to access electronic records and failed for technical reasons. Then, he provided the UC with a notebook containing the patient information of hundreds of hundreds of individual to show the type of material he had access too. And Dr. Gabrielian herself offered to give the U.C. her card allowing on-base access to Fort Liberty. Information concerning Fort Liberty broadly is relevant to understanding what information was offered.

In addition, the status of the defendants and Ft. Liberty is relevant to the conspiracy counts. Dr. Gabrielian discussed with the U.C. how Dr. Henry was more important at the time, because of his position in the military. The jury should not be deprived of the context for understanding that statement.

3. **The Defendants Motives for Taking Their Actions Are Relevant and Probative**

The defendants also appear now to seek to prohibit cross-examination regarding the defendants' intent to help Russian soldiers. ECF 166-1, at 14. First, it was the defendant, not the government, who emphasized this "humanitarian" concern repeatedly. And, as the government argued, that concern was not necessarily inconsistent with a desire to provide HIPAA information for personal gain, because the defendants sought to pass a "loyalty test" so that they could provide further information and take further steps that would aid Russia. And they sought to be "long term weapons" for Russia over the course of decades.

4

The defendants also argue that "the Court should preclude the Government from arguing that wanting to help Russia, wanting Russia to have economic and military strength, or providing medical assistance to Russian soldiers would fit within any definition of a criminal intent for personal gain [or malicious harm]." ECF 166-1, at 19.  But such motive evidence provides reasons for why the defendant undertook their actions, and helps explain why a member of the American military might conspire to provide assistance and aid to the Russian government.  Providing—and agreeing to provide more in the future—of sensitive medical records to a foreign government is a malicious act.  While the defendant argues that there is no evidence to the contrary, the agent testified that medical information is known to be a source of espionage.  To the extent the defendants' seek classified information or testimony on this matter, the government notes that counsel has not initiated or expressed any interest in initiating a security-clearance process at any point in this litigation.  Indeed, counsel has repeatedly stressed they did not want to seek security clearances, and the government has worked to accommodate that request.

The government does not believe there is any relevant further information to disclose on this matter, but if the defense counsel believes a lack of clearances to be harming efforts they are making in defense of their client, the government will consent to a delay while defense counsel seeks to obtain such clearances.  *See* ECF 166-1, at 19.

4. **The Defendant Herself Argued that Personal Identifying Information Rendered her "Turnable."**

In this matter, the Government has argued that the defendant cannot have it both ways: she may not argue that the fact that the Russian government knew her middle name (easily derived from that of her father) rendered her helpless, but that she did not believe the extensive medical records she turned over, selected for an individual who was the spouse of a member of the intelligence community, could not cause harm. *See* ECF 166-1, at 22.  The Court should not

5

preclude this argument, since it relies on the information advanced by the defendant herself. She emphasized the value of such private information to an intelligence officials.

5. **The Government May Argue that the Defendant Did Not Fear Russian Retaliation.**

The defendant concedes that the government may argue "from evidence that Defendants did not act out of fear." ECF 166-1, at 25. And the Government will so argue. In addition, there is no evidence at all the defendant was aware of any individual being harmed on American soil by Russia. In response, the defendant cites a New York Times article relying on anonymous and unconfirmed sources (that there is no evidence the defendant ever read), and concerns a *former Russian intelligence officer who defected to the United States* rather than someone who wished to be an asset to Russian intelligence. The defendant had no credible fear of retaliation, and the government may rightly argue that she has valid grounds for such fear, and she did not act like someone who was afraid.

The same is true of the motion to protect the identity of the undercover agent—a motion to which the defendant has consented so that defense attorneys need not obtain security clearances. To the extent the defendant argues that the consent motion contains language the defendant seeks to introduce as evidence, the government will carefully tailor the language this time so there is no confusion: the identity of the undercover operative is protected so that she can continue to do her job.

6. **The Government Will Not Argue that the Arguments are "Un-American" Unless in Valid Response.**

The Government will not argue that the defendants' arguments are un-American. However, if the defendant opens the door to the argument by impugning the conduct of the Government in similar language, the Government reserves the right to bring the issue up to the Court again at the appropriate time for determination.

## CONCLUSION

For the foregoing reasons, the defendants' motions should be denied.

                                              Respectfully submitted,

                                              Erek L. Barron
                                              United States Attorney

By:          /s/_____
               Aaron S.J. Zelinsky
               P. Michael Cunningham
               Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, a copy of the foregoing motion was electronically filed via CM/ECF which provides notice to counsel of record.

```
             /s/
Aaron S.J. Zelinsky
Assistant United States Attorney
```