IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | CRIMINAL NO. 1:22-336-SAG |
| | * | |
| ANNA GABRIELIAN and | * | |
| JAME LEE HENRY, | * | |
| | * | |
| Defendants. | | |

..........

### DEFENDANT JAMIE LEE HENRY'S STATUS REPORT AND REQUEST FOR HEARING

### Introduction

On November 13, 2023, the Court held a Pretrial Conference and Motions Hearing in contemplation of a November 28, 2023, trial date in the above-captioned case.

There were a number of matters on the agenda; but during the course of the discussion, certain specific issues arose that Government counsel told the Court and the Defendants would implicate the Classified Information Procedures Act ("CIPA") and would require that defense counsel obtain security clearances. Government counsel advised the Court that this would cause a significant delay in the proceedings, but that the matters at issue were "core CIPA" issues, and that the Government certainly could accommodate pursuing that process.

The question of the need for CIPA clearance had been an underlying issue in this case from the start, but a decision had been made earlier to try to avoid

implicating CIPA clearance because of the anticipated delay it would cause. However, it became clear to the Defendants in the first trial and again at the November 13, 2023, Hearing that in order to fully investigate and ultimately confront certain theories of prosecution and evidentiary submissions by the Government and to otherwise effectively defend this case, CIPA clearance would be required.

Once the issue came to the fore at the November 13, 2023, Hearing, the Court gave the Defendants time to consult with counsel to consider the importance of the issues to the defense, balanced against the anticipated significant time delay in obtaining CIPA clearance.  The Defendants and defense counsel tentatively concluded they would need to pursue CIPA clearance for defense counsel, but asked the Court for twenty-four hours to further discuss and consider the matter.

On November 14, 2023, the Defendants advised the Court that, after conferring further with counsel, they had concluded that they would indeed need CIPA clearance in order to defend against the charges and specific theories of prosecution and evidentiary submissions by the Government.  The Defendants filed a formal Notice of this decision, setting out its implications for Speedy Trial rights and other relevant information [ECF# 184]. The Court entered an Order on November 21, 2024, cancelling the trial date, specifically in order for the parties to pursue the security clearance process and possible discovery under the Classified Information Procedures Act [ECF# 185].  The Court directed the parties to provide "a status report on the security clearance process" on or before May 21, 2024 [*Id.*].

Notwithstanding the Government's assurance that it would initiate the CIPA clearance process immediately and provide defense counsel with the necessary application materials, and repeated emails from defense counsel to Government counsel requesting the same, the Government did not provide the application materials or otherwise initiate the process.

Government counsel has now advised that it has unilaterally decided that it will not provide the CIPA clearance application materials and it has advised that it does not believe CIPA procedures are necessary for the defense. It is as if the discussion at the November 13th Hearing and specifically its representations about the "core CIPA" nature of the issues and its assurances that it would begin the clearance process immediately never occurred. Over five months have now been wasted and the Defendants face the same impediments to being able to defend this case in the manner the Constitution guarantees that were identified at the November 13th Hearing.

The issues which all parties and the Court had concluded implicated CIPA will not in any way be resolved by the Government's conclusion and Defendants respectfully request an appearance to discuss these issues with the Court.

In light of these developments, Defendant Jamie Lee Henry is providing this detailed Status Report today, providing the Court with a chronology of relevant events and he is requesting a Hearing to ask the Court to address these developments and set a course moving forward that allows the him to meaningfully defend this case, consistent with his Fifth and Sixth Amendment rights and that enables defense

counsel to provide the level of effective assistance of counsel the Constitution guarantees. Defendant also Henry joins in the Status Report filed by his co-defendant.

## Relevant Background

**November 13th Hearing:**[1]

CIPA issues were discussed during the Hearing once the pending motions became the topic of discussion.

1. Government counsel advised the Court that "there are some CIPA things around the edges" [Tr. 39] when the Government responded to the Court's ruling on admitting the email indicating that the Government would go after a HIPAA violation [TR. 36] by arguing that this would open the door to putting on evidence that Government counsel believed the Defendants were a "national security threat." [TR. 37-38]. If the Government attempts to put in any such evidence at trial, obligatory disclosures and the right of confrontation assuredly would implicate CIPA related issues and would require clearance. It also would be objectionable at trial as irrelevant and unduly prejudicial, among other likely evidentiary challenges.

2. Next, the Court recognized the CIPA implications raised by the

---

[1] Only the portions of the November 13th Hearing that are directly relevant to the CIPA matter will be noted here. The discussion here will not go into the substance of the underlying CIPA-related issues already discussed at the hearing to avoid burdening the Court unnecessarily. Most of the issues were discussed at some length during the Hearing with all parties in agreement that CIPA was implicated. All "Tr." references are to page numbers from the transcript of those proceedings.

Government's intention to put on evidence that foreign intelligence agencies target medical information, stating that it was the Court's "understanding that the Government would have information it could put forth if the defense had been cleared but cannot do so under these circumstances." [TR. 40] Government counsel first described efforts to "navigate" around the issue, [TR. 40], but ultimately conceded that, if the defense argues that there has been no evidence produced that shows that individual medical records are "a target of foreign intelligence services" or why, then this would be "right at the core of CIPA." [Tr. 41]

From there the defense made clear that this was an important issue to the defense - that the Defendants needed to consider whether they would be willing to forego pursuing a line of defense in order to avoid the delay associated with obtaining security clearances or whether the CIPA process would have to be pursued. [TR. 41-49]. Government counsel advised the Court that while it would "take some time," "the Government can accommodate (a request by the defense for security clearance)." [TR. 49] The Court then recessed the proceedings solely and expressly so that the Defendants could decide whether to forego this important line of defense or take the additional time to have defense counsel obtain security clearances. [Tr. 49].

3. When the parties returned after the recess, the issue and the timing quandary were discussed at greater length. The defense theory was explained further and the unknown universe of information if CIPA were invoked was recognized by all. The Court repeatedly recognized that if the notion of evidence one way or the other were to be in play on the matter of foreign intelligence targeting of medical records, "… we

5

get into this CIPA situation." [Tr. 53] After talking it through further, the Court heard from the defense and said "[T]hen we should postpone it and ask them to run a search and look. Then we go through the security process and ask them to do that search. If that's information that you think you have to have for the defense, that's a viable option." [Tr. 59]

The Court said further, "[I] take the point that both (defense counsel) are making. But I think that puts us back where we were before the break which is that then we need to go down the CIPA route, and we get what we get from the CIPA route which may be helpful to you-all, may not be. We just don't know what we're going to get. But if it's that fundamental of a point that you wish to be able to raise, I want to be very clear that we are not in any way preventing us from going down that path; then we postpone the trial, we do the security clearances." [Tr. 61]

Tellingly, Government counsel responded by characterizing the Court's analysis of the situation as having "accurately summarized" it. [Tr. 61] When defense counsel advised the Court that the Defendants needed 24 hours to weigh the prospect of delay against the ability to pursue important defense theories and preventing a waiver argument, Government counsel acknowledged that the possibility of CIPA clearance being required had been an issue since the beginning of the case and while it was disappointed that it had not been invoked earlier, Government counsel assured the Court that they wanted "to be clear" with that Court that if the defense elected to go the security clearance route the Government would "facilitate it." [Tr. 63] Defense counsel then addressed the timing issue by advising

6

the Court that it was, indeed, true that the possibility of CIPA applying had been an issue all along, but now the defense saw how it was handicapped at the first trial, leading to the motions then before the Court, and a decision on whether to pursue the CIPA route depended on the resolution of the pending motions. [Tr. 64]

Two additional relevant things were made clear at the Hearing. Throughout, Government counsel advised the Court that without security clearances in place they could not inquire or reveal whether the evidence at issue existed or shed any other light on it, nor would there be any guarantees as to what the outcome of the CIPA process would be. [Tr. 65]

What also was made clear throughout was that if, after the 24 hours consideration period the Defendants elected to pursue the CIPA process, the Government would "facilitate it" by initiating the application process immediately and that only by going through the CIPA process with the necessary security clearances could we know what, if anything relevant existed and either way this could inform material evidentiary and argument issues key to defending the case from the defense perspective. The Court gave the Defendants 24 hours to consider the matter further and then advise the Court whether they wanted to proceed to trial as scheduled without the security clearances or obtain security clearances in furtherance of their defense. [Tr. 66].

4. The CIPA issue came up one more time during the November 13th Hearing with respect to two additional matters raised in the pending motions. [Tr. 79-86]. The matters at issue which the defense felt implicated CIPA were the defense motions

(a) to exclude argument and cross examination that people can be turnable after the disclosure of medical information and (b) on the subject of whether it was objectively or subjectively unreasonable for the Defendants to fear Russian retaliation.  Without getting into the substance of the discussion here, suffice it to say that the Court recognized that each issue might "get us into a CIPA context …" [Tr. 79]

The defense argued why even a claim by the Government of subjective unreasonableness would trigger CIPA (e.g. if intelligence sources support the fear, it makes both an objective and subjective fear more reasonable and would make cross examination by the Government implying otherwise, while knowing its own intelligence sources share the Defendants' fear an avenue taken in bad faith).  [Tr. 84 & 85].

The Court said the following: "Let's say it will certainly go in the CIPA bucket with respect to the consideration of the defendants with respect to whether they want to pursue the CIPA angle." The Court reserved making a final ruling on this issue in the motions "pending the CIPA situation."  [Tr. 86]

**Relevant Events Since the November 13, 2023 Hearing:**

On November 14, 2023, in email correspondence with the Court, defense counsel confirmed with the Court that after further consideration of the matter, both Defendants concluded that it would be best to invoke the CIPA procedures to fully defend against the charges they faced, even though, regrettably, it meant postponing the trial.  [11/14/2023 emails C. Mead to Chambers at 11:03 a.m.; 12:18 p.m.; D. Schoen email at 1:44 p.m.].

8

Also on November 14, 2023, Government counsel represented the following to defense counsel and the Court: "We will work to initiate the process of the security clearance application procedure for you and your co-counsel." [11/14/2023 email AUSA A. Zelinsky to Chambers at 11:06 a.m.]

The Court advised that it would, therefore, remove the case from the trial docket and ask the parties for a status report in 6 months. The Court also directed defense counsel to docket a pleading memorializing the matter. [11/14/2023 emails Court to parties 12:24 p.m. & 12:31 p.m.].

Following the Defendants' decision to continue the trial date in order to pursue the security clearances, later on November 14th and on November 15th, the parties exchanged additional emails. Government counsel wrote to inquire as to whether there were just three areas implicating CIPA on which Defendants sought information. [See AUSA Zelinsky 11/14/2023 emails at 12:33 p.m. and 4:57 p.m.]. Defense counsel responded by advising there would be additional items the defense would seek once the security clearances were granted and that the defense would send Government counsel a list of all items.[2] [C. Mead 11/14/2023 email at 5:07 p.m.].

---

[2] As Government counsel had noted previously, issues had arisen since the start of the case that implicated CIPA, but because Defendants did not want to delay their trial, they did not pursue the CIPA process and therefore had to forego important lines of examination and defense theories. For example, Defendants wanted to ascertain whether there was a recording of Dr. Gabrielian's call to the Russian embassy, how any such call was obtained by the Government, and several other issues Defendants were barred from ascertaining and pursuing, given the lack of a security clearance. Now that the process would be undertaken and the delay was unavoidable, Defendants wanted to obtain information to which they were entitled but had had to forego due to the lack of a security clearance previously.

9

Meanwhile, based on the decision to pursue the CIPA process, the Government's assurance that it would initiate the application process immediately, and the belief that, if initiated immediately, the process would be completed well within a six-month period, Defendants agreed to enter a speedy trial waiver for 6 months. Government counsel wrote to confirm this and wanted confirmation that Defendants would file something on the docket memorializing the agreement. [A. Zelinsky 11/15/2023 at 11:27 a.m.]. On November 16, 2023, Defendants filed their Notice that the parties had agreed to pursue the CIPA process and would cooperate to get security clearances as soon as possible, and that based on this assurance from Government counsel (that they would immediately initiate the application process for defense counsel) Defendants entered a Speedy Trial Act waiver for six months. [ECF# 184]

On November 21, 2023, defense counsel followed up with Government counsel to ascertain the status of the application process. [N. Cherry 11/21/2023 email at 10:39 a.m.] Government counsel responded by now saying that it could not begin the security clearance application process until it knows what all of the information the Defendant seeks is. [A. Zelinsky 11/21/2023 email at 11:01 a.m.].

This was rather puzzling. Government counsel participated in the November 13, 2023, Hearing and, as reflected in their email, they knew at least three main areas that all had agreed during that Hearing triggered the CIPA process. Based on that, the trial date had been postponed indefinitely, solely so that the application process could begin immediately. Moreover, Government counsel has assured the Court and

the parties that it would coordinate with the defense to begin the application process immediately and had represented to the Court all along that it would be impossible to know whether the CIPA process would be fruitful on the issues discussed during the November 13th Hearing until the CIPA process was undertaken and clearances were secured. Clearly, having to know every issue and avenue for discovery the defense would seek once the CIPA process would be undertaken should have been no reason for delaying the application process.

Nevertheless, less than two hours after receipt of the email, defense counsel replied by providing the full list of areas on which Defendants seek information and that would seem to implicate CIPA and asking Government counsel to provide clearance applications for all three defense attorneys. [N. Cherry 11/21/2023 email at 12:12 p.m.]. Government counsel responded soon after by assuring defense counsel that he would apply for three clearances (although he anticipated only being able to get two), that it was not a fast process and that Government counsel would apprise defense counsel of the status of the matter "as things progress." [A. Zelinsky 11/21/2023 email at 1:08 p.m.].

**Inexcusable Delay by the Government**:

After providing the Government on November 21, 2023, with the list of all subjects that might be relevant once CIPA security clearance was obtained, the defense received no response, notwithstanding their repeated assurances that they would begin the CIPA application process immediately.

11

On December 7, 2023, defense counsel sent an email to Government counsel noting that the defense had not heard anything about getting the security clearance process started and asking for an update [C. Mead 12/7/2023 email]. Government counsel responded they were "in discussions" and that they anticipated having some follow up questions "prior to beginning any clearance process" in light of the breadth of the discovery requests." [AUSA Zelinsky 12/7/2023 email].[3]

Defendants again heard nothing further from the Government. On January 27, 2024, defense counsel wrote to Government counsel, reminding Government counsel that the Defendants had agreed to delay the trial solely based on the Government's representations that it would implement CIPA procedures to resolve issues over Defendants' requests for exculpatory information or to exclude certain Government arguments. Defense counsel noted that well over two months had passed and the Government still had not even initiated the security clearance

---

[3] Once again, this position was irreconcilable with all earlier understandings and the Court's directives in November. Whether or not broader inquiry beyond the subjects discussed on November 13th would lead to additional discovery once CIPA security clearances were granted is a question wholly separate from the whether the security clearance application process should have begun immediately. At a minimum, in November 2023, all agreed that the subjects raised at the Hearing would trigger CIPA, that the Government would begin the process of having defense counsel apply for security clearances immediately based on the discussion and outcome at the November 13th Hearing, and the Defendants provided a Speedy Trial waiver based on the Court's directive, which, of course, was based on Government counsel's representations and assurances that they would begin the security clearance application process immediately. Applying for security clearances was simply the necessary first step in what can be, by all accounts, a lengthy process; whether CIPA discovery ultimately would extend beyond the subjects at issue on November 13th should never have been any obstacle to beginning the application process, and any suggestion otherwise is simply disingenuous.

application process. Defense counsel asked Government counsel to provide information as to what was going on [C. Mead 1/27/2024 email].

On February 2, 2024, AUSA Cunningham responded to the email and asked about setting up a meeting to discuss the case [AUSA Cunningham 2/2/2024 email].

On February 5, 2024, AUSA Cunningham and defense counsel had a phone conference for just over an hour. The entire call was spent going over the list defense counsel had provided to the Government on November 21, 2023, over two and a half months earlier. The AUSA wanted to go over each item on the list individually, purportedly to better understand them. It was difficult to reconcile this with the representation made by the Government on December 7, 2023, that they were in discussions about the items on the list when, during this February 5, 2024, call, Government counsel first asked what the basis was for each item on the list.

On February 21, 2024, AUSA Zelinsky sent an email asking for a call to follow up on the February 5th call. On February 22, 2024, all defense counsel and Government counsel had a conference call and the Government had a person named Heather Schmidt, of the "National Security Division" on the call. It was essentially nothing more than an instant replay of the February 5th call with AUSA Cunningham. This time AUSA Zelinsky wanted to go through each item on the November 21st list, again, purportedly to better understand what exactly was being sought. With some items, Government counsel advised that they believed they had provided all they had, but would go back and check (there has been no follow up on this), others they felt the defense was not entitled to have, and others, Government

13

counsel advised should be taken up with the Court. Over three months after the November 13th Hearing, Government counsel still refused to initiate the security clearance application process. At the end of the call, Government counsel advised that they would write up something summing up the issues and identifying the issues they believed appropriate to take up with the Court and would email it to defense counsel to review.

On March 10, 2024, having heard nothing further from the Government, defense counsel wrote again to Government counsel. Again, defense counsel reminded Government counsel that it was the Government that represented to the defense and the Court on November 13th, that if certain specified information were sought, CIPA would have to be invoked and the Government would immediately start the security clearance application process. Since that time, nothing in that regard had been initiated. Defense counsel further reminded Government counsel that on the February 22nd call, Government counsel had promised to send a written proposal for a status report to the Court on discovery issues that were at an impasse and which, therefore would be the subject of defense motions, but that nothing at all had been provided since the call. Finally, defense counsel reiterated the hardship this has caused the Defendants whose lives and careers are on hold. Defense counsel advised that the Defendants would like to file something right away and would like to incorporate the Government's draft if possible [C. Mead 03/10/2024 email].

Government counsel responded by advising that the Government plans to retain an expert witness that it believes would address "many of the outstanding

14

issues relating to the interest in medical records by foreign governments (and our own)." Government counsel further wrote that a "draft" would be forthcoming and information about their expert. [AUSA Zelinsky 03/10/2024 email].

This was not at all responsive to the matter at hand for several reasons. An "expert," (and especially one without a security clearance or access to the kinds of records at issue here) would not in any meaningful way resolve that single issue. Additionally, there were other issues specifically identified in the November 13th Hearing that triggered the CIPA process and the trial delay that such an expert would not be qualified to address. This response was not in any way reconcilable with the Court's directive following the November 13th Hearing, the parties' express understanding and agreed upon undertakings during and after that Hearing, and it did not in any way address the security clearance process.

Accordingly, defense counsel responded on March 11, 2024, by advising Government counsel that, designating an expert on the subject would only amplify the need (and right) to any classified information/documents on the issue, and inquired as to whether naming an expert was going to be the extent of what the Government intended to provide as a report to the Court. [C. Mead 03/11/2024 email]

Government counsel proposed a report to the Court that provided that: "(1) We have been consulting as directed by the Court (2) The Government does not believe security clearances are needed for counsel; and (3) Counsel for the defendants plan to file additional motions regarding this matter." [AUSA Zelinsky 03/11/2024 email]. It literally was as if the November 13th Hearing had never occurred.

15

Defense counsel wrote back, advising Government counsel that defense counsel do not agree that the process had followed what the Court directed; so defense counsel would not sign on an email so providing and would, instead file a separate report with the Court and motions, if necessary [D. Schoen 03/11/2024 email].

On March 15, 2024, Government counsel provided the name of their purported expert witness, acknowledging that she does not have and never has had a security clearance, describing the subject they plan to have her offer her opinion on, but declining to produce an actual expert disclosure because "no trial dates have been set by the Court." [AUSA Zelinsky 03/15/2024 email]. Defense counsel responded by advising that this information fell far short of the more fulsome expert disclosure promised and did not in any way resolve the issues that reluctantly had led the Defendants to agree to a postponement of the trial in order to pursue CIPA information. [C. Mead 04/03/2024 email].

Government counsel responded by advising that it would only provide an expert disclosure when the Court sets a timeline for the same. Government counsel then purported to address a couple of the items on the list provided to them on November 21, 2023 as possible areas of discovery the defense would seek once the CIPA process begins.

Curiously, as to three of those items (related to one of the issues raised during the November 13th Hearing), Government counsel advised that they "do not believe there is relevant information" concerning those items." [AUSA Zelinsky 04/03/2024 email]. This is impossible to reconcile with Government counsel's representations

16

during the November 13th Hearing that it could not know and could not disclose if it did know, whether any responsive information/documents existed until the CIPA process proceeded.

## Conclusion

It is indisputable that the express and sole reason for postponing the trial in this case was the conclusion on November 13, 2023, that if certain information were to be sought and obtained (if it exists), the CIPA procedures would have to be triggered. Indeed, it was Government counsel who so represented and, in fact, who represented to the Court that they have recognized that since the inception of the case and have at all times been willing and ready to trigger that process if the Defendants wished to pursue certain discovery and lines of examination to confront certain prosecution theories and avenues of examination.  Further, the Government assured the Court during and following the November 13th Hearing that it would initiate the security clearance application process immediately and facilitate the same.

Instead, other than a claim in December that Government counsel was in "discussions," there was no contact from Government counsel until three months after the Hearing and no effort ever to even initiate the security clearance application process.  As detailed above, the Government's response to defense efforts to  get the process moving and the defense's repeated entreaties for the same, citing the hardship of delay on the Defendants, was only to ask for a meeting in February 2024, more than three months after the November 13th Hearing,

followed by another replay of the same later in February, neither of which was in any way designed to advance the promised initiation of the security clearance process.

Now, more than five months after the November 13th Hearing, Government counsel has advised that its position is that no security clearances are needed and it believes it will address one of the issues identified as triggering the CIPA process by instead calling a purported expert witness, who has no security clearance and no access to the type of information from the Government that all parties and the Court understood on November 13th the defense was seeking (or seeking to ascertain whether it exists). Again, this cannot be reconciled with the events that took place in November of 2023.

This pleading is intended solely to serve as a detailed status report for the Court on the events (or lack of events) that have transpired since November 13, 2023 and to request a Hearing on the matter. It is not intended to address the substantive arguments rehashing the need for the CIPA process or the underlying information. That was the purpose of the November 13th Hearing.

In no way, shape, or form, could the Defendants have fathomed that five months after they were promised that the Government would initiate the security clearance application process in order to proceed under CIPA, the Government not only would have failed to initiate the application process, but would instead unilaterally decide that there is no need for security clearances or the CIPA process, notwithstanding the discussion and directives of November 13, 2023 and

subsequent representations. And this is also five months after Defendants agreed to postpone their trial and enter a Speedy Trial waiver solely and expressly for that purpose. Defendant does not believe that the Government has proceeded as contemplated by the Court or defense counsel and therefore provides this detailed Status Report and respectfully request a Hearing on the matter.

Respectfully submitted,

    /s/ *David I. Schoen*
David I. Schoen (Bar No. 28554)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

*Counsel for Jamie Lee Henry*

CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of April, 2024, a true and correct copy of the foregoing was electronically filed and served on counsel for the United States through ECF.

*/s/ David I. Schoen*