**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

IN RE: GRAND JURY PROCEEDINGS 1:22-cr-00336

JAMIE LEE HENRY

and

ANNA GABRIELIAN,

*Movants.*

Case No. _____

**MOTION FOR DISCLOSURE OF GRAND JURY MATERIALS**

Pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(i), Movants, Jamie Lee Henry and Anna Gabrielian, respectfully move this court for an order authorizing the disclosure to them of transcripts and related records of the grand jury proceedings that resulted in the original and superseding indictments in *United States v. Anna Gabrielian and Jamie Lee Henry*, Criminal No. 1:22-cr-00336 (D. Md. 2022).

As explained below, Movants demonstrate a particularized need necessary for avoiding possible injustice in a forthcoming judicial proceeding that both outweighs the need for continued secrecy and is narrowly tailored. Pursuant to Federal Rule of Criminal Procedure 6(e)(3)(F), this Court is the proper forum to adjudicate this request.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

On September 28, 2022, a federal grand jury in the District of Maryland returned an indictment charging Dr. Jamie Lee Henry and Dr. Anna Gabrielian with conspiracy in violation of 18 U.S.C. § 371 and multiple counts of disclosure of Individually Identifiable Health

1

Information ("IIHI") in violation of 42 U.S.C. § 1320d-6. *Memorandum Opinion* at 4 (*Exhibit 5*); *United States v. Gabrielian*, Criminal No. 1:22-cr-00336 (D. Md.), ECF 1 ¶ 8. The indictment, accompanied by a Department of Justice press release, alleged that Movants had intended to provide patient records to a person they allegedly believed was working for the Russian government. *Exhibit 1; Exhibit 2; Mem. Op.*, at 2, 4. The press release was framed around espionage and treason, though no such charges were ever brought. It also mischaracterized evidence, such as claiming that Dr. Gabrielian was motivated by "patriotism toward Russia." *Exhibit 2.* Both Defendants appeared in court on September 29, 2022, and were released on 24/7 home detention with electronic monitoring. *Mem. Op.* at 4-5; ECF Nos. 10, 12. The case received substantial press with the imprimatur of espionage committed by two educated professionals – physicians, one working at a preeminent hospital in Baltimore and the other serving as a physician in the United States Army.

But the trial did not proceed well for the Government. On June 1, 2023, this Court declared a mistrial. *Mem. Op.* at 5; ECF No. 118. This Court then scheduled a retrial for November 27, 2023, excluding time under the Speedy Trial Act, 18 U.S.C. § 3161, until that date. *Mem. Op.* at 6; ECF No. 155.

At a pretrial conference on November 13, 2023, the parties discussed whether a delay was necessary due to the existence of classified information. At that time, Defendants opposed a delay out of concern for their livelihoods and reputations and because they remained under intensive restriction. *Mem. Op.*, at 7. On November 14, 2023, however, defense counsel emailed the Government notifying them that the Defendants "request to invoke CIPA [Classified Information Protection Act] procedures and postpone trial." *Mem. Op.* at 8; ECF No. 194-1 at 5. The same day, the Government responded that it would initiate the security-clearance process

and asked defense counsel to confirm a Speedy Trial Act waiver. *Mem. Op.*, at 8-9; ECF 194-1 at 3-4. On November 21, 2023, this Court then canceled the November 27, 2023, retrial and directed parties to file a status report on the CIPA process by May 21, 2024. *Mem. Op.*, at 12-13.

Between November 2023 and April 2024, the Government failed to initiate the security clearance process, despite repeated outreach from defense counsel. *Mem. Op.*, at 16-17. Having received no status report from the Government, this Court scheduled an in-court hearing for May 6, 2024, to discuss "whether this case is now subject to dismissal under the Speedy Trial Act, because the Government did not adhere to its representations." *Mem. Op.*, at 27. At that hearing, this Court expressed its "grave concerns regarding the Government's handling" of the case. *Mem. Op.*, at 27. Soon after, on May 22, 2024, this Court issued its Memorandum Opinion (ECF No. 207) granting Defendants' Speedy Trial Act motions and dismissing the case with prejudice.

This Court found that the Government's "radio silence" was "dilatory" and had yielded "absolutely nothing productive." *Mem. Op.*, at 3, 29, 33. This Court characterized the case against Movants as "highly unusual," imbued with allegations of treason and espionage never charged. The Court further concluded that Movants endured "public obloquy far greater than that experienced by the average defendant." *Mem. Op.* at 41. This Court identified those damages as stemming from "stringent conditions of supervision" which, even when relaxed, prevented Movants from finding work because of the "reputational damage inflicted by the unusual charges in this case." *Mem. Op.*, at 40.

This Court observed that Movants endured half a year of uncertainty, stigma, and restricted liberty on home detention, all while the case "had not advanced towards its retrial in any meaningful way." *Mem. Op.*, at 3. In weighing the statutory factors, this Court held that dismissal with prejudice was "the only viable option" to prevent further harm to Movants' rights,

to protect the administration of justice, and to vindicate the important issues served by the Speedy Trial Act against Government neglect and disregard. *Mem. Op.*, at 3–4, 31–33, 42. The Government did not appeal this decision.

The Movants are now preparing civil actions against the Government relating to this matter.

## II.    LEGAL FRAMEWORK

The secrecy of grand jury proceedings is codified in Fed. R. Crim. P. 6(e). Rule 6(e)(2)(B) prohibits disclosure of "a matter occurring before the grand jury," subject to narrow exceptions. One exception – Rule 6(e)(3)(E)(i) – authorizes a court to permit disclosure "preliminarily to or in connection with a judicial proceeding." The Supreme Court has applied this exception to private litigants. *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211 (1979); *Dennis v. United States*, 384 U.S. 855 (1966); *United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958); quoted in *United States v. Colonial Chevrolet Corp.*, 629 F.2d 943, 949 (4th Cir. 1980).

Courts retain "substantial discretion" in deciding when disclosure is warranted, and a movant bears the burden to demonstrate: 1) a "particularized need"; 2) that this need outweighs the need for continued secrecy; and 3) that the request is narrowly tailored. *Douglas Oil*, 441 U.S. at 223; *see also Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959). The standard is "highly flexible…adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others." *United States v. Sells Engineering*, 463 U.S. 418, 445 (1983) (applying *Douglas Oil*).

The Fourth Circuit has repeatedly upheld this standard. *See In re Grand Jury Proceedings GJ-76-4 & GJ-75-3*, 800 F.2d 1293, 1298–99 (4th Cir. 1986) (district courts have discretion but disclosure requires a strong showing of necessity and the lapse of substantial time since the grand jury proceedings diminishes Government's continued need for secrecy); *United States v. Colonial Chevrolet Corp.*, 629 F.2d 943, 949–50 (4th Cir. 1980) (*Douglas Oil* test governs private parties' requests tied to judicial proceedings); *United States v. Moussaoui*, 483 F.3d 220, 235–37 (4th Cir. 2007) (reaffirming three-part test).

### III.    DISCUSSION

**A. Movants have a particularized need to avoid injustice in another judicial proceeding.**

A "particularized need" exists when certain grand jury materials are "rationally related" to civil matters and serve a "real need," not mere conjecture. *In re Grand Jury Proceedings*, 800 F.2d at 1302.

Movants satisfy this standard. Between September 28, 2022, and May 22, 2024, Movants endured what this Court described as "public obloquy...far greater than that experienced by the average defendant." *Mem. Op.* at 41. For more than eighteen months during their trial, Movants were unable to find employment "because they [were] unable to overcome the effect of the ... reputational damage inflicted by the unusual charges in [their] case." *Mem. Op.* at 40. This Court twice expressed its "grave concerns" about the Government's handling of the case and the resulting harm to Movants. *Mem. Op.* at 17, 38.

Movants are now preparing civil actions to recover for those damages. The primary purpose for the disclosure of these materials is to assist in the preparation for and the litigation of those judicial proceedings.

Here, the relationship between the grand-jury materials and the Movants' forthcoming judicial proceedings is direct and concrete. See *Douglas Oil*, 441 U.S. at 222-23 (court must evaluate the nature of the anticipated judicial proceeding and the connection between the grand-jury materials and the issues to be litigated); accord *United States v. Baggot*, 463 U.S. 476, 479-80 (1983) (describing the "judicial proceeding" exception in Rule 6(e) as encompassing "uses related fairly directly to some identifiable litigation, pending or anticipated"). Movants' anticipated actions will challenge the Government's misconduct in initiating and managing the prosecution – including the misstatements of evidence that this Court has already found contributed to extraordinary reputational and pecuniary harm.

The grand-jury transcripts bear directly on those claims because they are the only source that can establish whether additional inaccuracies or exaggerations were presented to the grand jury, whether those misstatements shaped the charging decisions, and how they fueled the public narrative that this Court already recognized as uniquely damaging. Thus, the upcoming judicial proceeding is neither abstract nor speculative: the claims turn on a factual question that cannot be answered without access to the grand-jury record. Failure to disclose these materials will create the injustice in those proceedings that Rule 6(e)(3)(E)(i) is designed to prevent.

The injuries this Court already identified trace back to the original indictment of September 28, 2022, which the Government since conceded contained misrepresentations of evidence. *Exhibit 3*. Specifically, the Government has conceded that the indictment falsely asserted that Dr. Gabrielian had said she would assist Russia even if it meant "being fired or going to jail" and that she "violated HIPAA 'all the time.'" *Exhibit 1*.

These inaccurate statements became central to the Government's public narrative, which spread around the country as it aired on national news media and social media. *Mem. Op.* at 5.

Those misrepresentations remain publicly available, even easily accessible today on the DOJ's website in its detailed official press release. *Exhibit 2;* viewable at https://www.justice.gov/usao-md/pr/major-united-states-army-and-maryland-doctor-facing-federal-indictment-allegedly.

From the outset, the Government framed Movants as seeking to harm the United States by aiding the Russian government in its war against Ukraine. Misstatements of evidence underpinned their portrayal. Yet the Government never charged espionage or treason – only what this Court called "highly unusual" counts involving disclosure of health information, which generated an equally highly unusual "degree of public interest." *Mem Op.* at 2.

Because the Government has already acknowledged factual errors and this Court has found that its conduct caused lasting reputational and pecuniary harm, Movants have an especially compelling need to review grand-jury materials, which may reveal additional Government misrepresentations before the grand jury. Only the transcripts and related records of the grand jury proceedings can reveal whether the Government misrepresented or overstated evidence to the grand jury and how those inaccuracies shaped the indictment and ensuing publicity. The exceptional public and private harm that persists despite dismissal with prejudice is precisely the kind of injustice for which Rule 6(e)(3)(E)(i) permits disclosure. See *Douglas Oil*, 441 U.S. at 222 (disclosure is warranted where necessary "to avoid a possible injustice in another judicial proceeding").

### B. Movants' need for disclosure outweighs continued secrecy.

Disclosure is warranted when a movant's need outweighs the need for continued secrecy. *Douglas Oil*, 441 U.S. at 222-23. The primary factor in assessing that interest is whether the grand jury has completed its work. *In re Grand Jury Proceedings*, 800 F.2d at 1300. Here, secrecy carries little force. The grand jury's proceedings concluded in 2023; the case was

dismissed with prejudice; and no retrial or ongoing investigation exists. *See Mem. Op.,* at 41-42. The Government itself has already conceded misrepresentations of evidence in its handling of those proceedings. *Exhibit 3.*

Where proceedings have long ended and dismissal bars revival, the rationale for secrecy becomes insubstantial. *In re Grand Jury Proceedings*, 800 F.2d at 1300, 1303. The Fourth Circuit has authorized disclosure in precisely such circumstances – where the controversy has already been publicly "aired." *Id.* at 1303.

Here, Movants' need for disclosure is compelling. The original indictment was returned nearly four years ago and publicly aired through national and social media, severely amplified by the Government's own press release. The Government later admitted to misrepresenting evidence in that indictment and in their accompanied press release, which remains publicly available.  The government cannot now claim a compelling interest in shielding from scrutiny what it has already exposed to the public. *In re Grand Jury Proceedings*, 800 F.2d at 1300-01 (quoting *SEC v. Everest Management Corp.*, 87 F.R.D. 100, 104 (S.D.N.Y. 1980)) ("After a grand jury's investigation has terminated, most of the reasons for grand jury secrecy are no longer applicable and the others are less compelling.").

Movants' need further outweighs any secrecy interest because their claims rest not on conjecture but on the Government's own admissions. They seek disclosure to trace the origins of those misrepresentations and determine whether others occurred. It is not "safe to assume" that inconsistencies would not come to light through review of grand jury testimony, and reliance on such assumptions cannot bar disclosure. *Dennis v. United States*, 384 U.S. 855, 873–74 (1966) (cited in *In re Grand Jury Proceedings*, 800 F.2d at 1303).

Ultimately, "after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." *Dennis*, 384 U.S. at 873-74 (cited in *In re Grand Jury Proceedings*, 800 F.2d at 1303).

### C. The request is narrowly tailored.

Movants' request for grand jury disclosures must be narrowly tailored to what is necessary for avoiding possible injustice in another judicial proceeding. *Douglas Oil*, 441 U.S. at 222-23. Here, Movants seek only the transcripts and related records of the grand jury proceedings, part of *United States v. Gabrielian,* No. 1:22-cr-00336 (D. Md. filed Sept. 28, 2022), which returned the original indictment on September 28, 2022, the superseding indictment on May 3, 2023, and the second superseding indictment on November 7, 2023.

Movants do not seek juror deliberations or identities. Movants further acknowledge that Rule 6(e)(3)(E)(i) authorizes the Court to impose reasonable protective conditions on disclosure, and they are willing to accept and comply with whatever limitations the Court deems appropriate. See *Dennis*, 384 U.S. at 874-75 (affirming the Court's discretion to impose reasonable protective measures but holding "the determination of what may be useful to the defense can properly and effectively be made only by an advocate").

### IV. CONCLUSION

Movants have met their burden under Supreme Court and Fourth Circuit precedent to justify the disclosure of the grand jury proceedings. Their petition is preliminary to and in connection with forthcoming judicial proceedings. Without disclosure, they cannot fully vindicate their right to remedy the miscarriage of justice in this matter. Rule 6(e)'s secrecy was never meant to protect prosecutions marred by government misrepresentations, sensational but

uncharged allegations, and the reputational and professional ruin this Court has already recognized.

Because the grand jury's functions have long ended, continued secrecy serves no legitimate purpose. Disclosure is necessary to ensure transparency and the fair administration of justice. For these reasons, Movants respectfully request that the Court authorize disclosure of the records of the grand jury proceedings that returned the original and superseding indictments in *United States v. Gabrielian*, No. 1:22-cr-00336 (D. Md.).

Dated: December 15, 2025

Respectfully submitted,

David P. Sheldon
Law Offices of David P. Sheldon, P.L.L.C.
100 M Street, SE, Ste 600
Washington, DC 20003
Tel: 202.546.9575
Fax: 202.546.0135
Email: davidsheldon@militarydefense.com

*Attorney for Movants*

Enclosures:
Exhibit 1: Indictment
Exhibit 2: DOJ Press Release
Exhibit 3: Emails showing Government admissions to misrepresentations
Exhibit 4: Memorandum Opinion

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

IN RE: GRAND JURY PROCEEDINGS 1:22-cr-00336

JAMIE LEE HENRY

and

ANNA GABRIELIAN,

Movants

Case No. _____

**ORDER**

Upon consideration of Movants' Motion for Disclosure of Grand Jury Materials, pursuant to Federal Rule of Criminal Procedure 6(e), and for good cause shown, it is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that the transcripts of grand jury testimonies given in proceedings for Criminal Case. No. 1:22-cr-00336 (D. Md) and any related records be disclosed to Movants; and it is further

ORDERED that the Clerk shall make the specified materials available to defense counsel, subject to further protective conditions imposed by this Court.

SO ORDERED this _____ day of _____, year _____.

Signed,

_____

Hon.
United States District Judge

11