**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| **v.** | Case No. SAG-22-336 |
| ANNA GABRIELIAN & JAMIE LEE HENRY, | |
| Defendants. | |

**GOVERNMENT'S RESPONSE
TO DEFENDANTS' MOTION FOR DISCLOSURE OF GRAND JURY MATERIALS**

The United States, through undersigned counsel, respectfully requests that the Court deny defendants' motion for disclosure of grand jury materials (ECF 218).  The defendants ask the Court to disrupt the rule of grand jury secrecy for them to explore whether any "inaccuracies were presented to the grand jury," *Id.* at 6, as they purportedly draft a civil action.  The defendants' speculative and unsupported allegations fail to provide a particularized need for the requested materials; their motion does not establish good grounds to overcome the need for continued secrecy; and their request for unspecified "related records" is not narrowly tailored.  For these and the other reasons articulated below, the Court should deny the defendants' motion.

**BACKGROUND**

On February 24, 2022, Russian President Vladimir Putin announced a "special military operation" into Ukraine, and launched a ground invasion into the country.  Former President Biden announced sanctions on Russia for the attack, which he deemed a "brutal assault on the people of Ukraine without provocation, without justification, without necessity."  Defendant Anna Gabrielian, a naturalized U.S. citizen from Russia and an anesthesiologist in Baltimore, Maryland called and emailed the Russian Embassy in Washington, D.C. five days later to offer the help of her and her husband, stating they did not want to cut Russia off from the international community.

At the time, defendant Jamie Lee Henry was a Major in the United States Army and was stationed at Fort Bragg, North Carolina.  *See* ECFs 1, 54.

In August 2022, a woman purporting to be a representative of the Russian government approached defendant Gabrielian, who asked if the woman had been sent by the Russian embassy, and the woman replied that she had.  In actuality, this woman was an undercover agent with the Federal Bureau of Investigation (the "UC").  Gabrielian told the woman she was going to work and wanted to meet after her shift was over.  Gabrielian then promised to text the UC later that day and volunteered that her husband, defendant Henry, was willing to help but that Gabrielian had not mentioned Henry's name to the embassy so that he could claim he was unaware of her actions. *Id*.  Over the course of five subsequent meetings, both defendants spoke with the UC, whom they believed to be a representative of the Russian government.  In these meetings, the defendants offered to provide health information of American military personnel and their families in order to assist the Russian government.  *See* ECF 1.  These conversations occurred largely in Russian.

On September 28, 2022, a federal grand jury sitting in the District of Maryland indicted the defendants for conspiracy in violation of 18 U.S.C. § 371 and multiple counts of wrongful disclosure of Individually Identifiable Health Information ("IIHI") in violation of 42 U.S.C. § 1320d-6. ECF 1.  The indictment spelled out 20 alleged overt acts of the defendants in furtherance of the conspiracy.  The overt acts included statements one or both defendants made to the undercover while they met and conversed in Russian.  *See* ECF 1 at ¶ 14.  To aid in the parties' mutual understanding of the evidence and discovery, the government furnished transcripts of these meetings to trial defense counsel.  The government first provided rough transcripts and later, when they had been created, finalized verbatim transcripts of the meetings.  *See* ECF 218-3.  During trial preparation, the trial defense counsel contacted the then-assigned Assistant United States

Attorneys (AUSAs) to express concern that certain words in the indictment did not align with the finalized verbatim transcripts. *Id.* The AUSAs agreed to seek a superseding indictment to make the language conform with the final transcripts, *id*, and did so before the jury trial commenced. ECF 75.

The case proceeded to trial on March 23, 2025. At the conclusion of trial, the jury deadlocked and the Court declared a mistrial on June 1, 2023. ECF 118. The Court scheduled a retrial for November 27, 2023, and excluded time under the Speedy Trial Act until that date. ECF 155.

On November 7, 2023, a grand jury returned a second superseding indictment against the defendants. ECF 172. The second superseding indictment differed from the superseding indictment solely in that it added a fraud count pursuant to 18 U.S.C. 1028(a)(7). All other language was identical.

At a pretrial conference on November 13, 2023, the parties and the Court conferred as to if further delay was necessary to proceed under the Classified Information Protection Act (CIPA). ECF 199 at 1-2. The next day, defense counsel notified the Government that the Defendants were "request[ing] to invoke CIPA procedures and postpone trial." ECF 194-1 at 5. The same day, the Government responded that it would initiate the security-clearance process and asked defense counsel to confirm a Speedy Trial Act waiver. ECF 199. On November 16, 2023, the defendants filed a "Notice re CIPA and the Speedy Trial Act" stating that "The Defendants agree that an initial period of six (6) months' delay in order to pursue relevant matters through CIPA procedures is reasonable and hereby agree that such six (6) months period ought to be excluded under the Speedy Trial Act, 18 U.S.C. § 3161." ECFs 184 at 2, 199 at 5. No party filed a formal motion or proposed order.

On November 21, 2023, the Court canceled the November 27, 2023, retrial and directed the parties to file a status report on the CIPA process by May 21, 2024.  ECF 185.

On April 25 and 26, 2024, defendants filed status reports with the Court.  ECFs 194, 195. On April 29, 2024, the Court set a May 6, 2024, hearing regarding the defendants' status reports relating to CIPA issues and whether the government had violated the Speedy Trial Act.  ECF 197.

On May 6, 2024, the Court held a hearing at which both defendants orally moved to dismiss the case pursuant to the Speedy Trial Act.  ECF 207 at 17.

On May 22, 2024, the Court granted defendants' Speedy Trial Act motions and dismissed the case with prejudice for violating the Speedy Trial Act.  ECF 208.  The Court explained the reasons for its dismissal in a memorandum opinion.  ECFs 206 and 207.

On December 15, 2205, the defendants filed the instant motion seeking disclosure of grand jury records.  In the motion, they seek the disclosure of grand jury "transcripts and related records" from three separate proceedings and state that they are preparing a civil action against the government.  ECF 218.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 6(e)(3)(E)(i) permits a defendant to seek grand jury materials in certain cases that are "preliminarily to or in connection with a judicial proceeding."

Recognizing the importance of secrecy to the proper functioning of the grand jury system, the Supreme Court has established a strict test that any party seeking grand jury transcripts under Rule 6(e) must show (1) a particularized need that the material they seek is needed to avoid a possible injustice in another judicial proceeding; (2) that the need for disclosure is greater than the need for continued secrecy; and (3) that their request is structured to cover only material so needed. *Douglas Oil Co. of California v. Petrol Stops NW,* 441 U.S. 211, 222 (1979).

This rule runs counter to the "long-established policy that maintains the secrecy of grand jury proceedings in federal courts." *United States v. Procter & Gamble*, 356 U.S. 677, 681-82 (1958); *see* Fed. R. Crim. P. 6(e)(2).    Thus, "[t]his indispensable secrecy of grand jury proceedings' . . . must not be broken except where there is a compelling necessity.  There are instances when the need will outweigh the countervailing policy.  But they must be shown with particularity." *Bast v. United States*, 542 F.2d 893, 894 (4th Cir. 1976) (quoting *United States v. Procter & Gamble*, 356 U.S. at 682).

Where a defendant alleges malfeasance, their request for grand jury materials must be more than "conclusory or speculative allegations of misconduct." *United States v. Loc Tien Nguyen*, 314 F.Supp. 2d 612, 616 (E.D. Va. 2004) (quotations omitted); *see also United States v. Donohue*, 574 F.Supp. 1263, 1266 (D. Md. 1983) (internal citations omitted) (holding that "conclusory allegations" leading to "fishing expeditions are inadequate" and "do not constitute a showing of 'particularized need'").

"It is not enough to show that some litigation may emerge from the matter in which the material is to be used, or even that litigation is factually likely to emerge.  The focus is on the *actual use* to be made of the material." *United States v. Baggot*, 463 U.S. 476, 480 (1983) (emphasis original).  "There must be some additional showing that the disclosure of the 'rationally related' grand jury materials would serve the interests of fairness and justice.  Ordinarily, 'the typical showing of particularized need arises when a litigant seeks to use the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.'" *In re Grand Jury Proc. GJ-76-4 & GJ-75-3*, 800 F.2d at 1302 (quoting *Douglas Oil*, 441 U.S. at 221 n.12) (internal quotations omitted).

Grand jury proceedings are entitled to a strong presumption of regularity. "Defendants alleging grand jury abuse bear the burden of rebutting the 'presumption of regularity attache[d] to a grand jury's proceeding.'" *United States v. Alvarado*, 840 F.3d 184, 189 (4th Cir. 2016) (quoting *United States v. Brothers Construction Co. of Ohio*, 219 F.3d 300, 314 (4th Cir. 2000)). Indeed, a party asserting a claim of grand jury abuse must "shoulder a heavy burden." *United States v. Flemmi*, 245 F.3d 24, 28 (1st Cir. 2001). *See also Loc Tien Nguyen*, 314 F.Supp. 2d at 616 (acknowledging the "heavy burden" on the defendant to establish "that 'particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment.'" (quoting *United States v. Abcasis*, 785 F.Supp. 1113, 1119 (E.D.N.Y. 1992))).

A particularized need for grand jury testimony must be demonstrated by more than a mere showing that such material is relevant. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, (1959). The party seeking the testimony must focus "on a specific area of inquiry," *United States v. Moten*, 582 F.2d 654, 663 (2d Cir.1978), and must show that the grand jury testimony will contain needed information not otherwise available. *E.g., Index Fund v. Hagopian*, 512 F.Supp. 1122, 1130 (S.D.N.Y.1981).

"[E]ven where the literal requirements of Rule 6(e) are met, the court which is requested to direct the disclosure must balance the goal of just result in a judicial proceeding against the countervailing policy of grand jury secrecy." *Matter of Fed. Grand Jury Proc.*, 760 F.2d 436, 439 (2d Cir. 1985), (quoting *United States v. Sobotka,* 623 F.2d 764, 767 (2d Cir. 1980). Under Rule 6(e)(3)(E)(i), the burden is on the defense to make "a strong showing of particularized need" for grand jury materials. *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 434 (1983).

To that end, "disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy." *Douglas Oil*, 441 U.S. at 223.

"Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations… [f]or in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. at 222. "[T]he interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities. *Id*.

Finally, any disclosure request must be narrowly tailored and specify the particular records the movant seeks. *See Cullen v. Margiotta*, 811 F.2d 698 (2d Cir. 1987) (It was not abuse of discretion to deny request for disclosure of grand jury material where civil plaintiffs' requests were broad scale and unparticularized), *overruled on other grounds*.

In sum, a request for grand jury materials that fails to articulate a particularized need for the materials and is mainly premised on speculation about what defendants allege might have happened in the grand jury proceedings should be denied.

**ARGUMENT**

**A. The Defendants fail to establish a particularized need for the  grand jury material to avoid a possible injustice**

The defendants' motion should be denied because it does not articulate a particularized need for grand jury materials.  To start, the motion conflates two wholly separate issues in an attempt to construct its particularized need: (1) a mistaken mistranslation in the initial indictment that was corrected before trial, and (2) a Speedy Trial Act violation after a petit jury deadlocked— which violation was not related to any grand jury matter.

7

The defendants state they anticipate filing a civil action to challenge what they deem governmental "misconduct in initiating and managing the prosecution." ECF 218 at 6. To support their claims, defendants point the Court to exhibits including a 2023 email chain between trial defense counsel and the trial AUSAs and this Court's Memorandum Opinion dismissing the criminal case on speedy trial grounds. (ECFs 218-3 and 207/218-4).

In the 2023 email exchange, trial defense counsel raised concerns about the accuracy of specific phrases in the indictment that were translated from surreptitious recordings between the defendants and an undercover FBI agent. While first acknowledging that initial transcripts were "in rough form," trial defense counsel then explained he had reviewed the "finalized transcripts" and found areas that did not exactly match the specific overt acts stated in the original indictment's paragraphs 14c and 14q and asked the government for "a commitment that you will correct the record." ECF 218-3 at 1-5.

The specific issue raised by the defense in the 2023 email exchange was that the original indictment alleged in paragraph 14q that "Gabrielian stated that although Henry was a '*coward*,' and concerned about violating HIPAA by providing records to the UC, *Gabrielian had no such concerns and violated HIPAA "all the time*."" ECF 1 at 7 (emphasis added).

The trial AUSA responded by email, confirming an oral conversation between the attorneys and stating that the government would seek a superseding indictment so that the language in the indictment matched the verbatim transcripts. ECF 218-3 at 1. The government did so on May 3, 2023. ECF 75. Accordingly, the case proceeded to trial on the superseding indictment with corrected language that alleged the following: "Gabrielian stated that Henry 'enjoys talking about things--- But when it comes to doing something, sometimes *he is a little apprehensive. If I said I will do something, then I'll do it*.'" ECF 75 at 7 (emphasis added).

The defendants now raise for the first time over two years later an unsupported claim that additional inaccuracies may have been presented to secure the initial, superseding, and second superseding indictments. ECF 218 at 9-10. Apart from pointing to the above correction, which had already been identified via finalized transcriptions made available to the defense and already corrected by superseding indictment, the defense points to no evidence of any inaccuracy in the indictments.

The defendants request license to embark on exactly the kind of "fishing expedition" courts in this district have previously barred. *United States v. Donohue*, 574 F.Supp. 1263, 1266 (D. Md. 1983) (cleaned up) (finding a defendant's assertions that inspecting grand jury minutes might reveal grounds to dismiss were "clearly insufficient" and "do not constitute a showing of 'particularized need'"). Defendants' claim that they need access to the transcripts to establish "whether" inaccuracies were presented to the grand jury, ECF 218 at 6, does not constitute a particularized need outweighing the need for grand jury secrecy. *See United States v. Bennett*, 702 F.2d 833, 836 (9th Cir. 1983) (district court properly denied defendant's motion for discovery of grand jury transcripts, since defendant's assertion that he had no way of knowing prosecutorial misconduct occurred did not constitute particularized need outweighing need for grand jury secrecy); *United States v. Edelson*, 581 F.2d 1290, 1291-92 (7th Cir. 1978) (bare assertion of prosecutorial misconduct did not demonstrate particularized need); *U.S. v. Silver*, 103 F.Supp.3d 370, (S.D.N.Y.2015) (finding that a defendant's speculative claim that the grand jurors may have been prejudiced by the United States Attorney's allegedly improper extrajudicial, pre-indictment comments on the defendant's guilt fell short of establishing a particularized need that outweighed the presumption of secrecy); *In re Grand Jury Testimony*, 832 F.2d 60 (5th Cir. 1987) (plaintiff failed to establish particularized need for disclosure of grand jury transcripts and was not entitled

to transcripts for impeachment or refreshing of recollection in a civil action after defendants were acquitted in a related criminal case).

The defendants' citation to the Memorandum Opinion dismissing the criminal case misreads the plain text ruling of this Court. Defendants' argument that this Court found "misstatements of evidence contributed to extraordinary reputational and pecuniary harm," ECF 218 at 6, is wholly unsupported by the Memorandum they cite. Indeed, while the Court found numerous "facts and circumstances which led to dismissal," not one of them had anything to do with a suggestion of prosecutors misstating evidence. *See* ECF 207/218-4, 32-36. Defendants advance no argument as to how grand jury records could aid a civil suit based on a speedy trial violation that occurred months after the grand jury hearings concluded. All that is left is the defendants' bald speculation that they might find something useful from the grand jury record in support of their civil suit. Where a defendant alleges impropriety in an indictment where there is no evidence otherwise, he fails to meet his heavy burden of demonstrating a particularized need for grand jury materials. *See United States v. Blume*, No. 5:18-cr-00026, 2022 WL 4076065 (S.D. W. Va. Sept. 3, 2022) (regarding a motion for grand jury materials based on the argument that the grand jury was improperly instructed, the court rejected the defendant's motion as "supported by only speculation"); *United States v. Eury*, No 1:20CR38-1, 2021 WL 276227 (M.D.N.C. Jan 27, 2021) (rejecting defendant's request for grand jury materials because there was no evidence the government "seriously misstated the applicable law to the grand jury").

**B. The Need for Disclosure is not Greater than the Need for Continued Secrecy**

The defendants posit that the public interest in grand jury secrecy is diminished because the grand juries and criminal trial concluded over two years ago. They cite the Fourth Circuit's 1986 holding *In re Grand Jury Proc. GJ-76-4 & GJ-75-3* for the proposition that when proceedings

end the rationale for secrecy becomes insubstantial and disclosure is a forgone conclusion. ECF 218 at 8. This is incorrect.

It is true that, "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing" that their particularized need outweighs the need for secrecy. *Douglas Oil,* 441 U.S. at 223; *but see Gilbert v. United States*, 203 F.3d 820, 2000 WL 20581, at *3 (4th Cir. 2000) (unpublished table decision) ("Once the proceeding of the grand jury ends, the interests in secrecy are reduced, but not eliminated."). However, that does not mean that the interests of grand jury secrecy vanish or that a requesting party has no requirement to show a particularized need. *See In re Grand Jury Testimony*, 832 F.2d at 64 (reversing a district court judge who permitted release of grand jury transcripts to plaintiffs in a civil action and holding that the need for secrecy, while reduced, is not "for the most part dissolved" because a related criminal case has ended).

The defendants' request may not rest simply on the weakness of the public interest considerations in favor of secrecy–they must make a showing of some real need as the moving party. *In re Grand Jury Proc. GJ-76-4 & GJ-75-3*, 800 F.2d at 1302. Further, the defendants do not stand in the same shoes as the Justice Department movants in *In re Grand Jury Proc. GJ-76-4 & GJ-75-3*. While the secrecy bar is lower after proceedings conclude, it is higher where, as here, the movants are private parties rather than government actors and are not entitled the same level of deference as was afforded in *In re Grand Jury Proc*. *See id*. at 1301 (quoting *Sells Engineering, Inc.*, 463 U.S. at 445) (holding that courts are not required "to pretend that there are no differences between governmental bodies and private parties" in determining whether to grant disclosure, since the same dangers of leakage from disclosure to the government are different from the dangers resulting from disclosure to a private party).

11

For the reasons discussed, the defendants' alleged particularized need is so minimal, and the allegations supporting it so conclusory and speculative, that they do not even clear the lowered bar.

### C. The Request is not Narrowly Tailored

The defendants' request is not only not narrowly tailored, it is not particularly defined. They seek not only transcripts from three different grand juries, but also unspecified "related records." ECF 218 at 9. Instead of specifying particular witnesses, areas of testimony, or otherwise, defendants assert an overbroad need for everything potentially "related" to three different grand jury proceedings. *See In re Catfish Antitrust Litig.*, 164 F.R.D. 191 (N.D. Miss. 1995) (holding plaintiffs were entitled to receive copies of requested transcripts when the request was narrowly structured to seek only transcripts of three witnesses that were 'actually needed'); *Grumman Aerospace Corp. v. Titanium Metals Corp. of America*, 554 F.Supp. 771 (E.D.N.Y. 1982) (holding that a party seeking testimony must focus on a specific area of inquiry, and must show that the grand jury testimony will contain needed information not otherwise available). This failure is reason enough to deny the motion.

## CONCLUSION

To warrant the requested relief, the defendants must overcome the presumption of regularity that applies to grand jury proceedings and the veil of secrecy that is closely guarded by the Court. As the defendants did not establish a particularized need for grand jury materials, nor overcome the veil of secrecy, nor narrowly tailor their request, the Court should deny the defendants' motion

Respectfully submitted,

KELLY O. HAYES
UNITED STATES ATTORNEY

By: _____

Robert I. Goldaris
Assistant United States Attorney
District of Maryland
36 South Charles St., 4th Floor
Baltimore, Maryland 21201
Robert.Goldaris@usdoj.gov
(410) 209-4800

CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, I electronically filed the foregoing using the

CM/ECF system, which sent a notification of the filing to counsel of record.


Respectfully submitted,



By:        */s/*
           Robert I. Goldaris
           Assistant United States Attorney
           District of Maryland
           36 South Charles St., 4th Floor
           Baltimore, Maryland 21201
           Robert.Goldaris@usdoj.gov
           (410) 209-4800